UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

DONALD LEE WEIDENBURNER,

    Defendant.

Case No. 02-cr-40053-JPG-1

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Donald Lee Weidenburner's

("Weidenburner" or "Defendant")  Motion to Dismiss (Doc. 592) and Memorandum (Doc.

593) in support thereof.  Specifically, Weidenburner seeks to dismiss the operative

indictment, alleging that prosecution thereunder violates his Sixth Amendment right to a

speedy trial.  The Government filed a Response (Doc. 595) thereto, to which Weidenburner

did not file a reply.

As a preliminary matter, the Court notes that Weidenburner filed his supporting

memorandum eight days *after* he filed the instant motion.  Weidenburner did not seek leave

to file the extremely belated memorandum, nor did he notify the Court that he would be

filing such a memorandum.  This course of action implicitly violates Local Rule 7.1(c),

which states that "[m]otions . . . to dismiss . . . shall be supported by a brief."  While the

Court could very well strike Weidenburner's memorandum on grounds of untimeliness, the

Court **DEEMS** it timely in order to give his motion a full and fair shake.[1]

---

[1]Notably, had Weidenburner not filed a memorandum, his motion could have been
denied on grounds of insufficiency.  Apart from briefly mentioning the Sixth Amendment
to the United States Constitution, the motion does not meaningfully cite or discuss any

**BACKGROUND**

The operative indictment in this criminal proceeding is the Third Superseding Indictment (Doc. 152), which was filed on June 3, 2003.[2] Weidenburner was apprehended in the Western District of Kentucky in November 2010 and was arraigned on December 10, 2010 — over seven years after the operative indictment's filing. Weidenburner now moves to dismiss the indictment on grounds that it violates his constitutional right to a speedy trial.

**ANALYSIS**

The Sixth Amendment to the United States Constitution provides as follows: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI. To discern whether one's constitutional speedy trial right has been violated, the Court considers the conduct of both the government and the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *United States v. Arceo*, 535 F.3d 679, 684 (7th Cir. 2008). More precisely, the Court weighs the following four factors, originally articulated in *Barker*:

> 1) Whether delay before trial was uncommonly long;
> 2) Whether the government or defendant is more to blame for such delay;
> 3) Whether, in due course, the defendant asserted his right to a speedy trial; and
> 4) Whether he suffered prejudice as a result of the delay.

*Doggett v. United States*, 505 U.S. 647, 651 (1992) (relying upon *Barker*, 407 U.S. at 530).

---

relevant legal standards or authority. This shortcoming clearly violates Local Rule 7.1, which states that "[a]ll briefs *shall contain* a short, concise statement of the party's position, together with *citations to relevant legal authority* and to the record." (emphasis added). Indeed, it is not the Court's role to conduct research or craft arguments for counsel.

[2]The original Indictment (Doc. 1) was filed on December 12, 2002.

*Accord United States v. Mitchell*, 957 F.2d 465, 468 (7th Cir. 1992).

None of the four *Barker* factors are necessary in finding a violation of one's right to a speedy trial; rather, the factors are related and need to be considered alongside other relevant circumstances. 407 U.S. at 533. If the Court finds that the defendant's constitutional right to a speedy trial has been violated, the indictment should be dismissed with prejudice. *United States v. Toombs*, 574 F.3d 1262, 1274 (10th Cir. 2009) (relying upon *Barker*, 407 U.S. at 522 ("The amorphous quality of the [Sixth Amendment speedy trial] right also leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right has been deprived. This is indeed a serious consequence because it means that a defendant who may be guilty of a serious crime will go free, without having been tried.")).

## I.      Length of Delay

Regarding the first *Barker* factor, the Seventh Circuit has found delays approaching one year to be presumptively prejudicial. *United States v. Ellis*, 622 F.3d 784, 791 (7th Cir. 2010) (citing *United States v. Oriedo*, 498 F.3d 593, 597 (7th Cir. 2007)). Here, the Government does not dispute that the delay in bringing Weidenburner to trial is presumably prejudicial and necessitates further speedy trial analysis.

## II.     Cause of Delay

The weight to be given the second *Barker* factor hinges on who is more to blame for the delay in prosecution. In assessing this factor, the Court should determine whether the Government exhibited due diligence and good faith in obtaining the defendant for trial. *See, e.g.*, *Mitchell*, 957 F.2d at 469; *United States v. Deleon*, 710 F.2d 1218, 1222 (7th Cir. 1983) (holding that a diligent good faith effort was made where, *inter alia*, ten DEA investigative

reports presented no reasonable information concerning defendant's whereabouts). Of course, "[a] defendant's claim that the government violated [his] right to a speedy trial is seriously undermined when the defendant, and not the government, is the cause of the delay." *Mitchell*, 957 F.2d at 469 (citation and quotation marks omitted).

In the case at bar, there can be no doubt that this factor overwhelmingly weighs in favor of the Government. The Government's response spells out the due diligence and good faith that characterized its efforts to apprehend Weidenburner and bring him before this Court. These efforts included, but were not limited to, the following:

1.  Agents from the United States Marshals Service ("USMS"), Drug Enforcement Administration ("DEA"), and Southern Illinois Drug Task Force interviewed Weidenburner's relatives and associates in Illinois, Florida, California, and Indiana regarding his whereabouts.

2.  The USMS entered Weidenburner's arrest warrant into the National Crime Information Center as early as October 15, 2002, *before* the filing of the original indictment in this case.

3.  Agents followed up on several leads regarding Weidenburner's whereabouts, including those that took the manhunt several hundred miles away.

4.  In 2007 and 2008, agents of the Southern Illinois Drug Task Force performed mail drops through the Postal Inspection Service on Weidenburner's relatives and associates.

Through these efforts and the others discussed in the Government's response, which the Court incorporates by reference into this memorandum and order, the Court is more than satisfied that the Government exhibited the necessary diligence to obtain Weidenburner for trial.

Assuming *arguendo* the Government did not make good faith efforts to apprehend

Weidenburner, Defendant has noone to blame but himself for the delay in prosecution.

Perhaps most notably, Weidenburner knew that he was wanted for crimes alleged to have

occurred in the Southern District of Illinois.  He stated as much to a DEA agent in December

2010.  Other evidence supports the fact that Weidenburner was aware of his fugitive status.

For example, Weidenburner's girlfriend, who went on the lam with Defendant only to

eventually surrender, stated that she and Defendant "decided to disappear" because of

forthcoming federal warrants.  And, between the time that Weidenburner fled this district and

was arrested, all fourteen of his co-Defendants had been prosecuted and sentenced, and some

have actually completed their terms of incarceration.  Despite Weidenburner's obvious

knowledge of his federal arrest warrant in this district, he made no effort to self-surrender

and instead went to great lengths to hide his whereabouts from authorities.  Defendant

employed at least two aliases during his exodus from the Southern District of Illinois.  He

lived and worked under these aliases and secured corresponding identification documentation

via illegal and fraudulent means.  In fact, during its search for Defendant, USMS agents

located current photographs of Weidenburner alongside publications that detailed forgery of

identification documents and "disappearing."

In his motion, Weidenburner argues that he "has absolutely no information or

knowledge of any particular effort on the part of the government to locate him and bring him

to trial, other than this eventual arrest."  Doc. 593, p. 2.  Of course, this assertion does not

negate the reasonable efforts that the Government actually undertook to apprehending

Defendant.  Moreover, as discussed in *Mitchell*, this assertion is largely undermined by

aforementioned circumstances that defined Weidenburner's time away from this district.  For

these reasons, this factor weighs heavily in favor of the Government.

## III.    Assertion of Speedy Trial Right

In evaluating the third *Barker* factor, a district court should consider when the

defendant asserted his right to a speedy trial in relation to when he knew about the

proceeding and in relation to the trial date.  *See, e.g.*, *United States v. Mitchell*, 957 F.2d 465,

469 (7th Cir. 1992); *United States v. Deleon*, 710 F.2d 1218, 1222 (7th Cir. 1983).

Here, this factor also weighs in favor of the Government.  Again, despite knowledge

of a pending federal arrest warrant pending in this district, Weidenburner opted to conceal his

identity in an effort to avoid arrest.  While on the lam for eight years, Defendant never once

sought to invoke his constitutional right to a speedy trial.  Indeed, it was delay, not a speedy

trial, that Weidenburner wanted, and the third *Barker* factor shall fall accordingly.  *See*

*United States v. Wanigasinghe*, 545 F.3d 595, 598 (7th Cir. 2008).

Even after being arraigned in November 2010, Weidenburner did not assert his speedy

trial rights until nearly six months later.[3]  Weidenburner did not bring up speedy trial

concerns until four weeks before the then-current jury trial setting, which had been continued

twice.  The Court finds that Defendant did not timely assert his right to a speedy trial and that

this factor weighs against him.

## IV.    Prejudice to Weidenburner

Finally, regarding the fourth factor under *Barker*, a district court should consider

---

[3]The Court notes that Weidenburner's current counsel has only been in the case
since late February/early March.

potential prejudice in light of the following three interests of criminal defendants: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." 407 U.S. 514, 532 (1972). The first interest cannot possibly be at issue in the instant case. As Weidenburner points out in regards to the third interest, "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. . . . and [the] importance [of presumptive prejudice] increases with the length of delay." *Doggett v. United States*, 505 U.S. 647, 655-56 (1992). That said, "as long as the government shows reasonable diligence in prosecuting its case, a defendant who cannot demonstrate prejudice with specificity will not show a Sixth Amendment violation, no matter how long the delay." *United States v. Hills*, 618 F.3d 619, 632 (7th Cir. 2010). More importantly, this factor cannot win the day for a defendant unless he makes a strong showing on the other *Barker* factors. *United States v. Oriedo*, 498 F.3d 593, 600 (7th Cir. 2007).

Here, Weidenburner has yet to articulate any prejudice that the delay in prosecution caused him; rather, he appears to contend that he has suffered prejudice *per se* due to the delay. The *Hills* Court, however, made clear that a defendant must cite specific impairments to his defense when the Government was reasonably diligent in prosecuting him. Weidenburner's failure to adhere to this specificity requirement leads the Court to believe that he he has not suffered any definite prejudice. Assuming *argunedo* Weidenburner were to make a substantial showing of specific prejudice, the Court does not believe that such a showing could overcome the weight afforded to the Government under the second and third *Barker* factors. And, lastly, if the proposition in *Oriedo* is to be taken literally, the Court's

7

previous analysis preemptively disposes of this factor.

## V.     No Need for a Hearing

Because Weidenburner moved for dismissal, he bears the burden of demonstrating the necessity of a corresponding evidentiary hearing. *United States v. Rodriguez*, 69 F.3d 136, 141 (7th Cir. 1995) (affirming district court's decision to not hold an evidentiary hearing on defendant's motion to quash arrest and suppress evidence). "To warrant a hearing [on a defendant's motion], the defendant's submission must demonstrate that there is a disputed material issue of fact." *Id*. Here, as discussed *supra*, Weidenburner has barely cited any specific and nonconjectural facts, let alone enough to create a disputed material issue of fact that would necessitate a hearing on his motion. As such, the Court can and will decide his motion on paper.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Weidenburner's Motion to Dismiss (Doc. 592). This matter remains set for a final pretrial conference on June 20, 2011, at 11:00 a.m. and for jury trial on July 11 , at 9:00 a.m. before the undersigned judge.

**IT IS SO ORDERED.**
**DATED: June 16, 2011**

<u>s/ J. Phil Gilbert</u>
**J. PHIL GILBERT**
**DISTRICT JUDGE**

8