IN UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DONALD L. WEIDENBURNER,<br><br>Defendant. | Case No. 4:02-cr-40053-JPG |

MEMORANDUM & ORDER

This matter comes before the Court on the defendant's Motion to Suppress Statements (Doc. 616) and Memorandum in Support (Doc. 615). The government has filed a response (Doc. 621) to which there is no reply. The defendant, Donald Weidenburner, moves to suppress statements he made to law enforcement agents in 2002 from being introduced into evidence claiming he was not advised of his *Miranda* rights, his statements were given under false pretenses, and he was denied counsel.

**BACKGROUND**

The procedural history of this case has already been discussed by this Court (Docs. 597, Doc. 623) and the Court will now only present the factual allegations relevant to Weidenburner's motion. On December 28, 2001, Weidenburner and his girlfriend were arrested on methamphetamine charges. Weidenburner had previously cooperated with law enforcement so Agents Hanisch and Mitchell met with the defendant in Spencer County Jail (Indiana) to speak with him and see if he would want to help again. The agents did not advise Weidenburner of his *Miranda* rights before speaking with him in the jail. The agents did not make promises regarding the charges against Weidenburner but did say they would tell the prosecutor about any

1

cooperation or assistance he provided. Weidenburner claims that in exchange for his cooperation, the two officers promised him he would not be prosecuted. Weidenburner was at first unable to post bond, however, his bond was later reduced. He was then able to pay it and be released from jail. Weidenburner claims the agents reduced his bond, however, there is no evidence to support this and it is denied by the government.

On February 19, 2002 (twelve days after being released and six weeks after being interviewed), Weidenburner contacted the Indiana authorities to tell them he had received a large amount of pseudoephedrine pills at a motel in Evansville, Indiana. Agents Hanisch and Mitchell met with Weidenburner at the motel. During this interview, he turned over the pills to the agents and provided the agents with multiple receipts and an eight-page letter about the manufacture of methamphetamine he had his girlfriend prepare for them. On February 20, 2002, Weidenburner placed two recorded phone calls on behalf of law enforcement.

On March 14, 2002, Weidenburner and his girlfriend participated in a tape recorded interview with Agents Hanisch and Mike Dinn at the Illinois State Police Office in Carmi, Illinois. Before this interview, Weidenburner signed an agreement with the Spencer County Sherriff's Department (Doc. 621, Ex. 5), and initialed next to the statement "no DCI agent may make any explicit or implicit promises or predictions regarding the likely disposition of any criminal charges that are pending against me…" (Doc. 621, Ex. 5). Weidenburner also wore a hidden recording device on behalf of law enforcement on several occasions in April of 2002. On April 13, 2002, Weidenburner met with Agents Hanisch and Mitchell again in the Illinois State Police Office in Carmi for another recorded interview. Weidenburner claims throughout this process he gave the agents information about his own illegal activities that is now being used against him.

On May 20, 2002, authorities came upon Weidenburner's van parked at a residence associated with methamphetamine and searched the van. The agents found methamphetamine-related materials and engaged in a vehicle and foot pursuit of Weidenburner before arresting him and charging him with new methamphetamine offenses. Following these charges, the Illinois State Police deactivated Weidenburner as a confidential source on June 7, 2002. The defendant traveled to Carmi, Illinois to speak with agents in the Illinois State Police Office sometime in September 2002. He attempted to convince agents not to indict him but the agents refused to make promises. Defendant claims the agents told him to "disappear" in order to protect his safety. He successfully evaded law enforcement until he was arrested in November of 2010.

**ANALYSIS**

I.   Motion to Suppress Standard

A defendant who seeks to suppress evidence bears the burden of making a *prima facie* showing of illegality. *United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir. 1992). The Court need not schedule a hearing on the basis of a motion which fails to allege a *prima facie* showing of illegality and which relies, at best, on vague, conclusory allegations. *Id.* at 1212; *United States v. Rollins*, 862 F.2d 1282, 1291 (7th Cir. 1988). A defendant must present "definite, specific, detailed, and nonconjectural" facts that justify relief before a district court will even grant a suppression hearing. *Randle*, 966 F.2d at 1212; *see e.g., United States v. Villegas*, 388 F.3d 317, 324 (7th Cir. 2004); *United States v. Felix-Felix*, 275 F.3d 627, 633 (7th Cir. 2001) (stating defendant's "burden to establish the necessity of a hearing by demonstrating that there was a disputed material issue of fact justifying relief").

It is a well-established rule that "the burden is on the movant to make specific factual allegations of illegality, to produce evidence and persuade the court that the evidence should be

3

suppressed." *United States v. Evans*, 572 F.2d 455, 486 (5th Cir.), cert. denied, 439 U.S. 870 (1978). It is only once the defendant establishes a basis for his motion to suppress that the burden shifts to the government to prove by a preponderance of the evidence the statement was given voluntarily. *United States v. Williams*, 604 F.2d 1102, 1125 (8th Cir. 1979). Voluntariness is "a question of fact to be determined from the totality of the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973).

II.      Requirement of *Miranda* Warnings

A. Standard

In *Miranda v. Arizona*, 384 U.S. 436, 460-61 (1966), the Supreme Court determined that the rule against self-incrimination attaches, and is "fully applicable during a period of custodial interrogation." The Supreme Court requires police to comply with certain "prophylactic" procedures before questioning an individual in custody. "[T]hey must fully apprise the suspect of the State's intention to use his statements to secure a conviction, and must inform him of his rights to remain silent and to 'have counsel present . . . if [he] so desires.'" *Moran v. Burbine*, 475 U.S. 412, 420 (1986) (quoting *Miranda* at 468-70); *accord Dickerson v. United States*, 530 U.S. 428, 435 (2000). The *Miranda* requirements are constitutional, not simply an exercise of the Supreme Court's supervisory authority to regulate evidence. *Dickerson*, 530 U.S. at 438, 444.

Statements gathered without giving *Miranda* warnings carry an irrebuttable presumption of involuntariness and are inadmissible in the prosecution's case in chief, even if seemingly voluntarily made by other standards. *Oregon v. Elstad*, 470 U.S. 298, 306 (1985). If a suspect unambiguously invokes his rights under *Miranda*, he is not subject to further interrogation until counsel is present or until he initiates further discussions. *Edwards v. Arizona*, 451 U.S. 477,

484-85 (1981). However, if a suspect waives his right to counsel after receiving the *Miranda* warnings, law enforcement officers are free to question him. *North Carolina v. Butler*, 441 U.S. 369, 372-376 (1979). Further, although such statements may not be used in the government's case-in-chief, the statements may be used for impeachment purposes. *United States v. Handlin*, 366 F.3d 584, 592 (7th Cir. 2004).

An individual is "in custody" for *Miranda* purposes when "there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (*per curiam*). The determination requires an objective, two-part inquiry: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. *Thompson v. Keohane*, 516 U.S. 99, 112 (1995) (internal quotations omitted), *cited in Yarborough v. Alvarado*, 541 U.S. 652 (2004). The first prong is entirely factual whereas the second prong is a mixed question of law and fact as to whether the facts rise to the level of formal arrest or restraint on movement. *Thompson*, 516 U.S. at 100.

Voluntary incriminating statements are not subject to *Miranda* warnings and are admissible as evidence. *United States v. Hendrix*, 509 F.3d 362, 374 (7th Cir. 2007); *Andersen v. Thieret*, 903 F.2d 526, 531 (7th Cir. 1990). This principle also applies to physical evidence that is recovered based upon a defendant's voluntary statements. *United States v. Patane*, 542 U.S. 630, 643-44 (2004). The Court also notes that "not all statements obtained by the police after a person has been taken into custody are considered the product of interrogation." *Hendrix*, 509 F.3d at 374. In *Rhode Island v. Innis* the Supreme Court explained that "interrogation" refers to "express questioning" as well as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to

5

elicit an incriminating response." 446 U.S. 291, 301 (1980). The test the Court is to employ in its application of *Innis* is "whether a reasonable objective observer" would have believed that the law enforcement officer's statements to the defendant were "reasonably likely to elicit an incriminating response." *United States v. Abdulla*, 294 F.3d 830, 834 (7th Cir. 2002) (citation omitted).

  B. <u>The statements made by Weidenburner will not be suppressed based upon *Miranda.*</u>

  Weidenburner seeks to suppress statements made in four separate interviews: statements made following his arrest in Spencer County Jail, statements made in Weidenburner's motel room in Evansville, Indiana, and statements made during the two recorded interviews which took place at the Illinois State Police Office in Carmi, Illinois. The Court now addresses whether those statements may be suppressed on the basis of *Miranda*.

  1. Interview in Spencer County Jail

  The government and defendant both agree the agents did not give *Miranda* warnings to Weidenburner prior to their original interview. The government has stated (and has informed defense counsel on several occasions) that statements made during this interview will not be used during the government's case-in-chief. The government puts forth that it may use the statements to impeach Weidenburner if he were to take the stand and perjure himself. The Court finds this to be in line with current case law in the Seventh Circuit. The Seventh Circuit previously held "the suppression of evidence by reason of *Miranda* is a shield, not a sword. The Fifth Amendment privilege against self-incrimination does not give a defendant license to perjure himself." *Handlin*, 366 F.3d at 592.

The Court will therefore **allow** the statements taken during the first interview with Weidenburner for the purposes of impeachment only, if he chooses to take the stand. The Court will **bar** the statements from being used in the government's case-in-chief.

2. Interview at the Motel in Evansville, Indiana

As previously stated, *Miranda* warnings only apply to statements made while in custodial interrogation. *California*, 463 U.S. at 1125. Applying the Supreme Court's two part test in *Thompson*, the Court must ask what the circumstances were surrounding the interrogation. 516 U.S. at 112. The interview took place on February 19, 2002, several weeks after speaking with Agents Mitchell and Hanisch.

In this instance, Weidenburner had recently been released from jail on drug charges and received a large quantity of drugs at his motel room. He then called the police and told them about the pills. He waited in his motel for Agents Mitchell and Hanisch to arrive. While waiting, he had his girlfriend prepare an eight-page letter about methamphetamine production in Southern Illinois. There is no indication Weidenburner was being compelled to provide these statements. He could have not called the authorities originally, changed his mind and left the scene, or provided minimal information to the authorities in order to avoid being caught with the pills himself. Instead, Weidenburner prepared a report for the agents about other illegal activities. There is also evidence Weidenburner was very familiar with the criminal justice system and had previously cooperated with the police on prior occasions.

The second prong requires the Court to examine whether, given the above circumstances; a reasonable person would have felt they were at liberty to leave. *Thompson*, 516 U.S. at 112. In conducting this inquiry, the Supreme Court looked to whether there was a formal arrest or significant restraint on movement similar to a formal arrest. *Id.* at 112 (quoting *California v.*

7

*Beheler* 463 U.S. 1121, 1125 (1983)). Once Weidenburner had called the agents and told them about the pills in his room, it is possible he could have felt he was not at liberty to leave, however, the facts in this case do not rise to the level required by *Thompson*. 516 U.S. at 112. Weidenburner provided more information than what the agents asked for in the motel and made two phone calls for the agents the very next day. These circumstances do not support the allegation Weidenburner was unable to leave or terminate the interview or was in custody. He was not arrested and does not allege in pleadings he was unable to leave or agents told him he could not leave.

The Court finds Weidenburner was not in custody nor subject to custodial interrogation at the time he made the statements to Agents Mitchell and Hanisch at the motel. Instead, it appears Weidenburner was acting in his own self-interest by attempting to curry good favor with law enforcement. The Court will therefore **allow** these statements to be introduced during the government's case-in-chief.

3. The recorded interviews

The Court will address the final two statements together as they are nearly identical circumstances. Weidenburner and his girlfriend both participated in recorded interviews on March 14, 2002 and on April 13, 2002. These interviews took place at the Illinois State Police Office in Carmi, Illinois and the interviews were conducted by Agents Hanisch and Mitchell. Prior to the interview on March 14, 2002, Weidenburner signed a form with the Illinois State Police indicating a number of things, including;

> I also understand that:
> F. if violations of the law by me can be sustained, I could be prosecuted.
> G. I am agreeing to function as a Confidential Source of my own free will and accord, and not as a result of any intimidation, promises, or treats (sic threats)
> I. that no DCI agent may make any explicit or implicit promises or predictions regarding the likely disposition of any criminal charges that are pending against

8

> me: only that the agent(s) will make the extent of my cooperation known to the prosecuting authorities.

(Doc. 621, Ex. 5).

In conducting the first prong of the test under *Thompson*, the Court notes Weidenburner arrived to and left from the interviews on his own accord. The first interview was conducted more than three weeks after Weidenburner last met with the agents (March 14, 2002) and he had sufficient time to change his mind, cancel the interview, or not show up. He did not do any of those things but instead chose to come to the police station for an interview. He also signed the agreement explicated above which stated he is acting by his own free will and not as a result of any intimidation or promises. (Doc. 621, Ex. 5). He then arrived for a second interview a month later (April 13, 2002), again on his own accord. There is no evidence the agents made statements to Weidenburner that he was unable to leave.

The second prong requires the Court to determine whether, based upon the factual circumstances, there was custody similar to a formal arrest. *Thompson*, 516 U.S. at 112. The Court finds there was not. Although the Court notes the interviews were held in a police station, there are no other facts to support Weidenburner thought he was unable to leave. Weidenburner willingly went to the police station not once, but twice, over a month period in order to give information to the police. As Weidenburner was not in custody, the government did not act improperly or illegally in failing to give *Miranda* warnings. *See Hendrix*, 509 F.3d at 374. The Court will **allow** the statements made during the interviews to be used in the government's case-in-chief.

  III.  Promises by Law Enforcement

A. Standard

A defendant's "confession is voluntary if, in the totality of circumstances, it is the

'product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will.'" *United States v. Montgomery*, 555 F.3d 623, 631-32 (7th Cir. 2009) (*quoting United States v. Huerta*, 239 F.3d 865, 871 (7th Cir. 2001)). A confession must be voluntary under the totality of the circumstances, and a court evaluating the voluntariness of a confession must consider any promises or representations made by interrogating officers. *United States v. Springs,* 17 F.3d 192, 194 (7th Cir.1994); *Holland v. McGinnis,* 963 F.2d 1044, 1050–52 (7th Cir.1992). The Court can examine "whether the defendant was read his *Miranda* rights, the defendant's age, the duration and nature of the questioning, and whether the defendant was punished physically." *Charles,* 476 F.3d at 497. The burden is on the government to prove the voluntariness of the statement by a preponderance of the evidence. *Lego v. Twomey,* 404 U.S. 477, 489 (1972); *United States v. Church,* 970 F.2d 401, 404 (7th Cir.1992).

Further, the use of deceit to obtain a confession does not make the confession involuntary as long as the police interrogation was not coercive. *See Montgomery,* 555 F.3d at 629*, (quoting Sotelo v. Indiana State Prison,* 850 F.2d 1244, 1251 (7th Cir.1988)). In order for a confession to be involuntary, the defendant must "demonstrate that police coercion or overreaching overbore the accused's will and caused the confession. *Conner v. McBride,* 375 F.3d 643, 651 (7th Cir. 2004). "But promises-particularly honest ones…to bring cooperation by the defendant to the attention of prosecutors do not render a confession involuntary." *United States v. Charles*, 476 F.3d 492, 497 (7th Cir. 2007). To succeed to suppress a statement as involuntary, the defendant "has to establish that his interrogator made him a promise that was materially false and thus sufficient to overbear his free will." *United States v. Villalpando*, 588 F.3d 1124, 1128 (7th Cir. 2009).

B. <u>The statements made were not involuntary due to a false promise.</u>

Weidenburner also contends the statements were involuntary because they were made as a result of promises to him by Agents Mitchell and Hanisch. In determining whether a statement is voluntary, the Court is to look at the *Miranda* rights, the defendant's age, the duration and nature of the questioning, and whether the defendant was punished physically. *Charles,* 476 F.3d at 497.

In regards to the first interview, the government has already conceded he was not advised of his *Miranda* rights. Weidenburner was 43 years old at the time of his first interview and had an extensive criminal history, both at the state and federal level, starting in 1978. Weidenburner had cooperated with the government before in a federal case brought in the Southern District of Indiana which resulted in a plea agreement and a Rule 35 reduction in 1997. Neither party has informed the Court as to the duration of the questioning but the government has indicated it was short (resulting in a one-page report) and cordial because the agents and Weidenburner knew each other from another case Weidenburner was involved in. Weidenburner does not allege he was punished physically. These factors weigh in the favor of the government in establishing the statement was voluntary.

When looking at the subsequent three interviews, this Court has found *Miranda* was not necessary because Weidenburner was not in custody. The defendant's age remained the same and he was not punished physically. The Court was not advised as to the nature and duration of the questioning, however, Weidenburner's repeated voluntary contact with Agents Hanisch and Mitchell would indicate the interviews were at least cordial. These factors again weigh in favor of the government.

The Court is also required to look at whether the statement was a product of "rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will." *Montgomery*, 555 F.3d at 631-32. Again the Court looks to the document signed by Weidenburner (Doc. 621, Ex. 5) where he was explicitly told agents could not make promises regarding prosecutions. This document was signed before the final two interviews which occurred at the police station and undermines Weidenburner's assertion he only made the statements in exchange for a promise he would not be prosecuted. Further, Weidenburner's extensive criminal history and previous federal prosecution (and resulting plea agreement) undermine the credibility of the allegation he only cooperated because of promises he would not be prosecuted. He instead appears to be making a decision based upon his rational intellect and free will.

The government concedes the agents told Weidenburner in the jail that they would tell the prosecutor about the defendant's cooperation. The Seventh Circuit has held that an agent promising to bring cooperation to the attention of prosecutors does not render a confession involuntary. *Charles*, 476 F.3d at 497. This promise, therefore, is not enough to render Weidenburner's statement involuntary. *See id*. Weidenburner's claim is again undermined by the cooperation agreement he later signed. The document explicitly states he is cooperating of his "own free will and accord, and <u>not as a result of any intimidation, promises, or treats</u>" (sic threats). (Doc. 621, Ex. 5, emphasis added). Weidenburner could have refused to sign the document or complained at this time about the alleged prior promises made to him but failed to do so.

Weidenburner's allegations his statements are involuntary due to promises made by the government are not credible. The Court finds the government has met its burden to prove the statements were voluntary and the statements will therefore not be suppressed.

IV.     Sixth Amendment Right to Counsel

A. Standard

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This also applies to the states through the Fourteenth Amendment.  The right to counsel attaches "at or after the initiation of adversary judicial criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 689 (1972); accord *Texas v. Cobb*, 532 U.S. 162, 167-68 (2001); *Quadrini v. Clusen*, 864 F.2d 577, 589 (7th Cir. 1989).  Interrogation must cease the moment an accused requests counsel. *Edwards v. Arizona,* 451 U.S. 477 (1981). However, if the defendant initiates the contact with law enforcement, his request for counsel is superseded by his behavior until a new request for counsel is made. *See Smith v. Illinois*, 469 U.S. 91, 95 (1984); *Edwards,* 451 U.S. 477; *United States v. Segal,* 207 F.Supp.2d 835, 841 (N.D. Ill. 2002).

B. <u>Weidenburner was not denied his right to counsel.</u>

The Court has found the statements made at the Spencer County Jail will not be permitted in the government's case-in-chief and therefore a renewed analysis of whether Weidenburner also should have had counsel present is not necessary. There is also no evidence Weidenburner ever requested counsel at any time. Furthermore, Weidenburner initiated all of the subsequent contact with the government and made the statements voluntarily, which would supersede a

13

hypothetical request for counsel. *See Smith v. Illinois*, 469 U.S. 91, 95 (1984); *United States v. Segal*, 207 F.Supp.2d 835, 841 (N.D. Ill. 2002).

## CONCLUSION

In a motion to suppress, the defendant has the burden of making a *prima facie* showing of illegality. *Randle*, 966 F.2d at 1212. Here, the Defendant simply has not met that burden. Weidenburner was in custody during his first interview and as such, statements he made during that interview will not be allowed in the government's case-in-chief. Weidenburner was not in custody during subsequent interviews and made his statements voluntarily to Agents Mitchell and Hanisch. These statements are admissible in the government's case-in-chief. Further, his Sixth Amendment right to counsel was not violated. Weidenburner has failed to allege "a *prima facie* showing of illegality" and "relies, at best, on vague, conclusory allegations," the Court therefore will not have a hearing on this matter. *Randle,* 966 F.2d at 1212; *Rollins*, 862 F.2d at 1291.

For the foregoing reasons, the Court **DENIES** Weidenburner's Motion to Suppress Statements (Doc. 616).

**IT IS SO ORDERED.**
**DATED: December 7, 2011**

s./ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**